UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GEORGINA MORGENSTERN,                                   04-CV-0058
                                                        (JS)(ARL)
                              Plaintiff,

        -against-

COUNTY OF NASSAU; NASSAU LOCAL 830, CIVIL
SERVICE EMPLOYEES ASSOCIATION, INC.; THOMAS R.
SUOZZI, in his individual and official capacities; ANTHONY
M. CANCELLIERI, in his individual and official capacities;
PATRICIA BOURNE, in her individual and official capacities;
JOHN P. DONNELLY, in his individual and official capacities,

                              Defendants.
-----------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR REMITTITUR OR A NEW TRIAL

                                                         LORNA B. GOODMAN
                                                         Nassau County Attorney

Of Counsel:
Karen Schmidt
Deputy County Attorney

Plaintiff, Georgina Morgenstern, ("Plaintiff"), brought this Section 1983 action against Defendants, County of Nassau (the "County"), Anthony M. Cancellieri ("Cancellieri"), Patricia Bourne ("Bourne"), and John P. Donnelly ("Donnelly"), ("Defendants"), claiming violation of her First and Fourteenth Amendment rights arising from the termination of her employment with the County. Trial was conducted from July 27, 2009 to August 7, 2009 with the jury deliberating and delivering its verdict on August 7, 2009.

Per the verdict sheet, attached to the Declaration of Karen Schmidt ("Schmidt Dec.") as "Exhibit A," the jury found that Defendants Bourne, Cancellieri, and Donnelly were directly involved in the violation of Plaintiff's due process rights. The jury found that only Bourne knew that Plaintiff complained of County resources being used for private purposes but that it was not a motivating factor in the decision to terminate her. *Schmidt Dec.*, Ex. A. Therefore, Plaintiff's First Amendment retaliation claims were dismissed by the jury. The jury awarded Plaintiff $1,500,000 dollars in damages for emotional distress and $100,000 in punitive damages against each individual Defendant. *Id.*

The emotional distress award far exceeds both the emotional injuries suffered by the Plaintiff and the casual effect that any actions of the Defendants may have had upon Plaintiff's emotional health. The punitive damage award is grossly excessive and must be reduced. Accordingly, Defendants move for a new trial pursuant to *Rule 59* of the *Federal Rules of Civil Procedure* on the ground that Plaintiffs' compensatory and punitive damage awards were excessive.

## STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 59

*Rule 59(a)(1)* states that "[t]he court may, on motion, grant a new trial on all or some of the issues- and to any party-as follows: after a jury trial, for any reason for which a new trial has

heretofore been granted in an action at law in federal court….” This Court has the discretion to order a new trial in whole or limited to damages, or, in the alternative, grant remittitur by conditioning the denial of a defendant's motion for a new trial on the plaintiff's accepting a reduction in damages. *Rainone v. Potter*, 388 F. Supp. 2d 120, 121 (E.D.N.Y. 2005). "Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu-Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir. 1984).

"The standard for granting a new trial pursuant to *Rule 59* is less stringent than that for judgment as a matter of law." *Ruhling v. Newsday, Inc*., 2008 U.S. Dist. LEXIS 38936, *10 (May 13, 2008), citing *Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). "If a district court finds that a verdict is excessive, it may order a new trial, order a new trial limited to damages, or, under the practice of remittitur, condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Id.*, quoting *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005). "However, it is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial." *Id.*, citing *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F.Supp. 2d 555 (S.D.N.Y. 2008). A jury's damages award can be overturned only if it is so excessive that it shocks the conscience of the court. *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, *45 (E.D.N.Y. May 7, 2009).

**ARGUMENT**

I.  **THE COMPENSATORY DAMAGE AWARD TO THE PLAINTIFF WAS EXCESSIVE AND MUST BE REDUCED**

The Supreme Court has recognized that an award for mental and emotional distress in cases involving the denial of due process requires that the injury was actually caused by the denial. *Carey v. Piphus*, 435 U.S. 247, 264 (1977). In this case, a reduction in the amount awarded for emotional damages is required because the evidence presented at trial does not establish that the entirety of Plaintiff's emotional injury was caused solely by the denial of Plaintiff's due process.

In fact, at trial, the testimony presented established that the emotional distress suffered by Plaintiff predated her termination, and in the period following her termination was largely caused by factors other than her termination. Plaintiff testified that she was prescribed an anti-depression medication, Clonopin, in 1998, far before her termination. *See* Trial Transcript, annexed to the Schmidt Dec. as "Exhibit B," 594:24, 595:1-16. Plaintiff testified that she took the anti-depressant medication for a period of time after it was prescribed, and then on an "as needed basis." *Schmidt Dec*., Ex. B, 596:5-9. Plaintiff also testified that she was prescribed the anti-depressant medication Celexa at that time. *Id.*, 711:17-18.

Plaintiff's own expert, and her treating psychologist, Dr. Leland Petersen ("Dr. Petersen"), testified that prior to his treatment of Plaintiff which began immediately following her termination, Plaintiff had a vulnerability to depression and anxiety. *Id.,* 808: 23-25, 809:1. Dr. Melamed, the Defendant's expert, testified that Plaintiff informed him that she had a very significant prior psychiatric history. *Id.,* 1164:11-13. Specifically, he testified that Plaintiff suffered from a biologically based depressive disorder, rooted in heredity and personal traits. *Id.*,

1169:20-22. Most significantly, Dr. Melamed testified that the termination of Plaintiff's employment was not the causal factor of Plaintiff's emotional injury, *i.e.* her depression. *Id.,* 1170:13-19.

In light of the clear evidence of Plaintiff's preexisting condition, Defendants should only be held financially liable for those aspects of Plaintiff's emotional injury which they caused and/or exacerbated. This line of reasoning has been accepted by the Court in many cases. In *McGrory v. City of New York,* the Court reduced Plaintiff's emotional distress award from $533,390 to $100,000, reasoning that, "[w]hile the defendants cannot disclaim liability for [Plaintiff's] emotional pain and suffering on the theory that he was substantially impaired before the alleged retaliation occurred, it is equally true that they are only liable for any exacerbation of his preexisting conditions caused by his termination." *McGrory v. City of New York*, 2004 U.S. Dist. LEXIS 20425, * 52 (S.D.N.Y. Oct. 8, 2004). In another case, *Bick v. City of New York*, the compensatory award of $750,000 was reduced to $100,000. The *Bick* Court, while recognizing that aggravation of a preexisting condition gives rise to liability, took into account, "the fact that plaintiff has suffered through personal adversity, not attributable to the defendants, that undoubtedly contributed to her emotional suffering. *Bick v. City of New York*, 1998 U.S. Dist. LEXIS 5543, *78 FN 21 (S.D.N.Y. April 21, 1998). Based on the fact that Plaintiff's preexisting condition played a role in her emotional injuries post termination, the compensatory damage award of $1,500,000 must be reduced.

Furthermore, the compensatory damage award should be reduced because it fails to reflect the actual cost incurred in treating Plaintiff's emotional injuries. Plaintiff's treating psychologist, Dr. Petersen, testified at trial that he has billed Plaintiff $128,500 for the treatment of her depression. *Schmidt Dec*., Ex B, 791:8-11. Peterson testified that he received

reimbursements from Plaintiff's insurance company in the amount of $48,551. *Id.,* 791:13-15. At the time of trial, the evidence indicated a balance of $79,949 outstanding for the costs of Plaintiff's treatment for depression. *Id.,* 791:16-17. At trial, though given ample opportunity to do so, Plaintiff offered no other testimony regarding the cost of her medical treatment. The jury award of $1,500,000.00 in this case far exceeds the actual costs of treating Plaintiff's actual injury. In fact, the actual cost of treatment for Plaintiff's emotional injuries constitutes only 8.5% of the amount of compensatory damages awarded to Plaintiff.

Additionally, Plaintiff's compensatory damage award should be reduced because the emotional distress suffered by Plaintiff was based, at least in part, on her claim of First Amendment retaliation, which the jury dismissed. *See Ruhling v. Newsday,* 2008 U.S. Dist. LEXIS 38936 (E.D.N.Y. May 13, 2008) (emotional distress award of $100,000 reduced to $50,000 based on fact that emotional stress based in part on claims dismissed by the jury at trial.)

Finally, Plaintiff's compensatory damage award must be reduced because Plaintiff failed to afford Defendants the proper opportunity to explore the credibility of Plaintiff's expert witness, Dr. Petersen. On August 19, 2009, Plaintiff's counsel sent Defendants a request to pay Dr. Petersen's bills incurred in connection with his pretrial deposition. *See* bills, annexed to Schmidt Dec. as "Exhibit C." These bills are dated March 11, 2009, March 23, 2008 and April 3, 2009. On April 14, 2009, Dr. Petersen was deposed. At deposition, he was represented by Plaintiff's counsel, Christopher Davis, from Thompson, Wigdor & Gilly. Prior to his deposition, on April 2, 2009, Dr. Petersen was served a subpoena, wherein he was instructed to bring:

> "Unredacted, original records regarding care and treatment rendered to Georgina Morgenstern. Said records shall include, but shall not be limited to, any notes, records, correspondence and communications by and between the witness and any representative of Thompson, Wigdor & Gilly, LLP, from September 6, 2007 to the date of production." *See* Subpoena, annexed to Schmidt Dec. as "Exhibit D".

When asked if he brought any of the subpoenaed documents with him, Petersen stated that he did not. *See* Deposition Transcript, annexed to Schmidt Dec. as "Exhibit E," 6:17-21. Dr. Petersen stated that counsel instructed him to not bring the subpoenaed documents. *Id.*, 8:2-8. The dates reflected on the bills sent to Defendants post-trial clearly indicate that these bills, which detail the numerous hours Dr. Petersen spent with Plaintiff's counsel, were in existence prior to Petersen's deposition. Therefore, not only did Dr. Petersen fail to comply with the subpoena, but did so upon the advice of counsel. Dr. Petersen's bills indicate that he spent 23 ¾ hours preparing with Plaintiff's law firm, Thomas, Wigdor & Gilly ("TWG"), prior to his deposition. The fact that Dr. Petersen was instructed by Plaintiff's counsel to ignore the subpoena and not bring any of the requested documents, including those reflecting his conversations with TWG after spending countless hours with TWG seems highly suspect. The failure to provide the subpoenaed documents denied Defendants the opportunity to explore relevant areas regarding the course of Plaintiff's treatment, in addition to denying the Defendants' ability adequately to properly explore the depth and degree of TWG's involvement in Plaintiff's treatment- all of which severely skewed the testimony of Plaintiff's emotional injuries that was presented to the jury.

In light of Plaintiff's counsel's failure to turn over notes taken by Dr. Petersen, this Court should order a new trial. By way of example, in *Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 112 (2d Cir. 2002), the Second Circuit ruled that judgment should be vacated, and new trial ordered, if the moving party could establish that the opposing party acted with culpable state of mind in withholding evidence, thereby prejudicing the moving party, stating that the, "District Court should consider the likelihood that the newly produced e-mails would have affected the jury's verdict, in light of all the other evidence at trial." Should the

Court choose instead to grant remittitur, Defendants respectfully request that the compensatory damage award granted by the jury based on the incomplete picture of Dr. Petersen's course of treatment be substantially reduced.

## II.     THE PUNITIVE DAMAGES AWARDED IN THIS CASE WERE GROSSLY EXCESSIVE

Defendants request that this Court reduce the punitive damage award in this case on the ground that the award was grossly excessive. Plaintiff was awarded a total of $300,000.00 in punitive damages, with a sum of $100,000.00 each being assessed against Defendant Bourne, Cancellieri and Donnelly. *Schmidt Dec.*, Ex. A.

In Section 1983 actions, such as this case, a jury is entitled to assess punitive damages when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A punitive damage award may be reversed only when it is so high as to shock the conscience and constitute a denial of justice. *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 883 (2d Cir. 1988).

To ascertain whether a punitive damage award is unduly excessive, courts may look to the guideposts established by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). These guideposts include 1) the level of reprehensibility of the underlying conduct; 2) the ratio of punitive damages to compensatory damages awarded; and 3) comparison between this remedy and civil penalties authorized or imposed in comparable cases. *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing to *Gore*, 517 U.S. at 574-75.)

As noted by the Supreme Court, the most important factor in assessing a punitive damages award is the degree of "reprehensibility" of the defendant's conduct. *Gore* at 575. The Court cited aggravating factors which indicate that the conduct was particularly reprehensive,

such as "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee v. Edwards*, 101 F.3d 805, 809, citing to *Gore* at 575.

Applying these factors to the instant case, it is clear that the Defendants' conduct does not rise to the level of conduct so reprehensible as to merit a punitive damages award of $300,000.00. First, there was no allegation, much less a finding, that any of the Defendants committed or threatened to commit violence against Plaintiff. Second, there was no proof at trial that any of the Defendants engaged in repeated instances of misconduct, in this case, of terminating an employee's employment without due process. Finally, there was no proof that any of the Defendants acted with deceit or malice as opposed to negligence. In fact, the jury charge presented by the Court specifically instructed the jury that they did not have to find that "defendants acted or failed to act in a specific intent to deprive her of her rights." *Schmidt Dec.*, Ex. B, 1413: 22-24. The Court only stated that the jury had to find that the Defendants acted, "intentionally or recklessly," (*id.* at 1414:24-25, 1415: 1-2), that is, "voluntarily, deliberately and purposefully." *Id.* at 1415:3-7. The jury's finding of liability on the part of Defendants for the violation of Plaintiff's due process rights does not demonstrate that the jury found that the Defendants acted with deceit or malice.

By way of example, in *Norris v. N.Y. City College of Technology*, an unlawful termination case, the punitive award of $425,000 was reduced to $25,000 based upon the fact that the Court found that, other than the fact that the defendant acted with the knowledge he would violate Plaintiff' rights, there were no other indicia of reprehensibility present. *Norris v. N.Y. City College of Technology,* 2009 U.S. Dist. LEXIS 3186, * 22 (E.D.N.Y. Jan. 16, 2009).

The Court noted that the defendant's decision to terminate was "a transient outburst of pique and frustration; while such conduct warrants some amount of punishment and deterrence, it is not, sufficiently reprehensible to support the jury's award of $425,000." *Id.* at * 23.

The facts and circumstances established over the course of the trial demonstrate that the reasoning applied in the *Norris* case is applicable here as well. Like the *Norris* defendants, the termination of Plaintiff's employment occurred immediately after her use of the intercom system in the County legislative chamber. While the termination subsequent to this incident was deemed to constitute a violation of Plaintiff's due process rights, the termination itself does not rise to a degree of reprehensibility as to merit an award of $300,000.00.

Applying the guideposts established by the Supreme Court, it is clear that the punitive damage award in this case was grossly excessive, therefore, Defendants respectfully request that this Court reduce the award.

## CONCLUSION

Based on the foregoing, the County should be awarded judgment as a matter of law, that the compensatory and punitive damage award be greatly reduced, or, in the alternative, a new trial be ordered pursuant to *Federal Rule of Civil Procedure 59(a)*.

Dated: Mineola, New York
       September 1, 2009

                                         LORNA B. GOODMAN
                                         Nassau County Attorney

                 By:        /s/
                                         Karen Schmidt
                                         Deputy County Attorney
                                         One West Street
                                         Mineola, New York 11501
                                         (516) 571-6063

cc:    Scott Gilly, Esq.
       Thompson, Wigdor & Gilly. LLP
       85 Fifth Avenue, Fifth Floor
       New York, New York 10003