UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GEORGINA MORGENSTERN,

                            Plaintiff,                  **MEMORANDUM**
                                                   **AND ORDER**
            -against-                         CV 04-58 (ARL)

COUNTY OF NASSAU; ANTHONY M.
CANCELLIERI; PATRICIA BOURNE;
and JOHN P. DONNELLY, in their individual
and official capacities,

                            Defendants.
-------------------------------------------------------------X
**APPEARANCES:**

**DOUGLAS WIGDOR**
**SCOTT BROWNING GILLY**
**THOMPSON WIGDOR & GILLY, L.L.P.**
Attorneys for Plaintiff
85 Fifth Avenue
New York, New York 10003

**LORNA B. GOODMAN**
**NASSAU COUNTY ATTORNEY**
**by: MATTHEW WEINICK**
**MICHAEL C. SORDI**
**ESTHER MILLER**
Attorneys for Defendants
One West Street
Mineola, New York 11501

**LINDSAY, Magistrate Judge:**

      The plaintiff, Georgina Morgenstern ("Morgenstern"), commenced this action against the

County of Nassau, Anthony M. Cancellieri, Patricia Bourne and John P. Donnelly pursuant to 42

U.S.C. § 1983.  The plaintiff claimed that the defendants deprived her of her rights to due process

secured by the fourteenth amendment and to free speech secured by the first amendment.  This

matter was tried before a jury for nine days from July 27, 2009 to August 7, 2009.  The jury found

in favor of the plaintiff on her due process claim and awarded her $1.8 million dollars in

compensatory and punitive damages.  The jury found against Morgenstern on her first amendment claim.

During the trial, the parties were advised that in the event of a verdict in Morgenstern's favor, the court would determine her entitlement to back and front pay.  The parties agreed to submit affidavits and memoranda in lieu of a post trial hearing and have done so.  In addition, the plaintiff has applied for an award of attorneys' fees and costs and for enhanced damages for excess tax liability.  The defendants have submitted a motion to present mitigation of damages evidence and, if necessary, to amend their answer to add the affirmative defense.  For the reasons that follow, the defendants' motion to amend is denied and the defendants are precluded from introducing mitigation evidence.  The court awards Morgenstern back pay of $427,718, comprising lost wages from December, 2003 to August, 2009, and declines to enhance the plaintiff's award for increased tax liability.  As is addressed below, the court declines to award front pay at this time and will accept additional briefing on the issue of whether reinstatement is feasible.  The court also awards Morgenstern prejudgment interest on the back pay award to be determined in accordance with 28 U.S.C. § 1961(a), $1,059,255 in attorneys' fees, $64,500.49 in costs, and post judgment interest pursuant to 28 U.S.C. § 1961(a).

## DISCUSSION

### I.  Mitigation of Damages

Before addressing Morgenstern's entitlement to back pay and front pay, the court must resolve whether the defendants' failure to plead mitigation of damages as an affirmative defense resulted in a waiver and, if it did, whether the court should grant leave to the defendants to amend their answer to add the affirmative defense.  The defendants argue that based on the "universally accepted principle that a harmed plaintiff must mitigate damages," *see Roach v. City of New York,*

1992 U.S. Dist. LEXIS 10067 *18, n.6 (S.D.N.Y. July 10, 1992), the court should accept evidence of the plaintiff's failure to mitigate her damages following her termination even if accepting such evidence would require an amendment to their answer. The defendants further argue that the defense of mitigation is not an affirmative defense as to damages citing, in support of this argument, *Tufano v. Riegel Trans., Inc.* 2006 U.S. Dist. LEXIS 8702 *15 (E.D.N.Y. Feb. 11, 2006).

An "overwhelming majority of federal courts have decided, . . . that failure to mitigate damages is an affirmative defense," and therefore, must be pleaded. *Eassa v. Hartford Fire Ins. Co.,* 1991 U.S. Dist. LEXIS 17309 *22 (N.D.N.Y. Nov. 29, 1991); *see also* Fed. R. Civ. 8(c). Moreover, "[t]he general rule in federal courts is that a failure to plead [this] affirmative defense results in a waiver." *Travelers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir. 1994). In light of this well established rule, the defendants' failure to plead mitigation operates as a waiver of this defense. The defendants, nonetheless, argue that mitigation is an affirmative defense to liability, not damages and as such should be considered by this court in awarding damages. The defendants reach this conclusion based on a misreading of the holding in *Tufano.* In *Tufano,* the court held that the defendant had waived its right to introduce evidence of mitigation in light of the parties stipulation as to the amount of damages. The court simply noted that had the proffered mitigation evidence also been relevant on the issue of liability it would have been admissible. Consistent with the general rule, this court finds, as did the court in *Tufano,* that the defendants have waived their right to argue mitigation on the issue of damages.

Notwithstanding the waiver, the defendants have made a motion to amend their answer under Rule 15(b) in order to add the affirmative defense. Rule 15(b)(1) provides:

> If, at trial, a party objects that evidence is not within the issues

3

> raised in the pleadings, the court may permit the pleadings to be
> amended.  The court should freely permit an amendment when
> doing so will aid in presenting the merits and the objecting party
> fails to satisfy the court that the evidence would prejudice that
> party's action or defense on the merits.[1]

"Rule 15(b) is 'intended to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel." *Brandon v. Holt,* 469 U.S. 464 (1985)(citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1491, pp. 453, 54 (1971 ed. and Supp. 1983)).  However, in determining whether the party against whom the amendment is offered will be prejudiced, it has been generally held that where a party moves to amend at the close of trial, the objecting party will be prejudiced.  *See Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 94 (2d Cir. 2000).

The plaintiff, initiated this action on January 8, 2004.  Before being served with a responsive pleading, the plaintiff then amended her complaint.  On August 2, 2004, the defendants filed an answer to the amended complaint, which asserted a number of affirmative defenses, but not a mitigation defense.  On March 9, 2006, the plaintiff filed a second amended complaint.  Once again, the defendants failed to plead mitigation in their responsive pleading. During the second week of trial, the defendants sought to introduce testimony to establish that the plaintiff's failure to take advantage of the Collective Bargaining Agreement (CBA), and more specifically the grievance process, constituted a failure to mitigate damages.  The court sustained the plaintiff's objection to the introduction of this evidence noting both the failure to plead mitigation as well as the history of this proceeding.  The court noted:

I have spent the last hour looking at every argument made by the

---

[1]The plaintiff's opposition addresses Rule 15(b)(2).  The court will not address the merits of the plaintiff's 15(b)(2) argument.  The defendants only rely on subsection (1).

4

county throughout all the proceedings in this case.  And since '04, every time the county has made an argument in support of its position it has consistently, over and over, taken the position that this plaintiff was not entitled to relief because she was a probationary employee, not entitled to any rights under the collective bargaining agreement.

It was the basis upon which they objected . . . to the preliminary injunction request.  It was part of the argument in the motion for judgment on the pleadings.  And it was very clearly the posture they undertook coming into this case.

And it wasn't until, . . . Tuesday when . . .I raised the whole issue of post-termination deprivation or post termination proceedings . . . that the county first started to scramble . . . to try and come up with some theory of the case by which they could save or defend the due process claim. . . .  The county . . . addressed that issue the following morning . . . .

Never once did they argue that any of this had to do with mitigation . . . . [T]he first time that mitigation was raised ever in these five years of litigation was today. . . .

So to argue now, today, the last hour of the trial that . . . she should be somehow penalized in damages would be wrong.  It would be so unfair that I don't even see it as a close call anymore.

Tr. 8/6/09 at 1246-48.  Although the court precluded the defendants from offering mitigation evidence at trial, the defendants requested, and were granted, leave to brief the issue post trial, the motion now before the court.

Restating the same arguments made at trial, the defendants contend in their motion papers that Morgenstern "could have 'stopped the bleeding,'" . . . by pursuing her options available under the CBA with the CSEA Union."  In support of this contention, the defendants offer the affidavits Tim Corr, a CSEA Union representative, and Daniel McCray, the Director of Nassau County's Office of Labor Relations.  Mr. Corr avers that although he advised Morgenstern that she was a probationary employee and sent her home, "had [she] given him documentation demonstrating

5

that she was permanent, rather than probationary employee, [he] would have assisted her in pursuing the procedures contained in Section 10 of the CBA.  Corr Aff. at ¶¶ 13, 15, 23.  Mr. McCray explains the grievance process in his affidavit and suggests that Morgenstern would have been reinstated within 95 days of her termination had she availed herself of union grievance procedures.  McCray Aff. at ¶¶ 3-13.

The defendants' arguments are unpersuasive given that throughout the long history of this litigation they have consistently maintained that the plaintiff was a probationary employee with no grievance rights under the CBA.  The record reflects that when Morgenstern met with the union representative after her termination she was so informed.  Within weeks of being fired, Morgenstern commenced this action and moved, by order to show cause, for a preliminary injunction seeking to be reinstated.  The position taken by the defendants, who had all of Morgenstern's documentation, was that the plaintiff was a probationary employee and that to the extent her employment records reflected otherwise they were in error.  At some point during the five years of litigation, the defendants refined their argument asserting instead that the plaintiff's employment records were not in error so much as they were incomplete and failed to reflect that the plaintiff's probationary term had been extended by the sick and vacation days she took.   The defendants have thus been unwavering in their assertion that Morgenstern was a probationary employee with no grievance rights under the CBA.

Under these circumstances, there is no question that the plaintiff would be substantially prejudiced were the defendants permitted to reverse themselves five years after the start of this litigation to argue that the plaintiff's damages should be limited because of her failure to pursue a grievance under the CBA.

## II.  Economic Damages

Having determined that the mitigation defense will not be considered, the next question for the court is whether the plaintiff is entitled to an award of back pay and front pay.[2]  "'It is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. §1983, a plaintiff must prove more than a mere violation of [her] constitutional rights.  [She] must also demonstrate that the constitutional deprivation caused [her] some actual injury."  *Miner v. City of Glens Falls,* 999 F.2d 655, 660 (2d Cir. 1993)(citing *McCann v. Coughlin,* 698 F.2d 112, 126 (2d Cir. 1983)).  As such, "[t]he appropriate remedy for a proven due process violation often depends on the stage at which the violation is found . . . ."  *Brody v. Minnich,* 345 F.3d 103, 119 (2d Cir. 2003).  Where, as here, a plaintiff seeks damages for a due process violation that has already occurred, courts require the plaintiff to show that the property deprivation for which compensation is sought would not have occurred had the required process been afforded.  *Id.* (citing Miner, 999 F.2d at 661-62*).*  With these guidelines in mind, the court addresses the parties' submissions.

### A.  Back Pay

An award of back pay is ordinarily part of the remedy fashioned by the court for a violation of 42 U.S.C. § 1983.  *See Wylucki v. Barberio,* 2001 U.S. Dist. LEXIS 21134 *17 (W.D.N.Y. Aug. 24, 2001).  That is, however, if the plaintiff can show that her termination would not have occurred had proper procedure been observed.  *See Otero v. Colligan,* 2006 U.S. Dist. LEXIS 29991 *52 (D. Conn May 17, 2006).  Here, the County concedes that had a proper and

---

[2]"Back pay and front pay have historically been recognized as equitable relief," and thus, are issues left for the court's determination.  *Luca v. County of Nassau,* 2008 U.S. Dist. LEXIS 47973 *1 (E.D.N.Y. Jun. 16, 2008).

timely hearing been held the plaintiff "would have been restored to her position . . . and she would have received all of her back pay . . . ."  Sorti Aff. at ¶ 15.  Thus, in this case, the court need not address the causation issue and turns directly to the amount of the award.

In her post-trial submission, the plaintiff argues that she is entitled to $427,718 in back pay.  In support of her claim, the plaintiff offers the expert report of Dr. Frank Tinari, who arrived at that number based on the plaintiff's annual pre-termination salary of $70,030, from December 5, 2003, the day she was fired, to August 2009, when the trial took place.  Dr. Tinari then applied the step increases that would have occurred each year on the plaintiff's anniversary date.  Finally, Dr. Tinari reduced the projected earnings by the plaintiff's actual earnings in each calendar year.

The defendant offers three reasons why the court should deny the plaintiff any award of back pay, two of which concern her duty to mitigate.  First, the defendants argue that despite her "wide and varied educational background, bilingual abilities, and an extensive work history," *see* Sorti Aff. at ¶¶ 12-13, the plaintiff did very little to obtain other work.  Second, the defendants argue that had the plaintiff pursued the grievance/arbitration process she would have been reinstated.  As previously stated, the defendants have waived their right to argue mitigation.  But, the court feels compelled to note that even if the defense had been considered, the defendants' arguments would have been rejected.  With respect to the grievance argument, the court has already addressed the inconsistency of the defendants' eleventh hour mitigation argument.  With respect to the argument that the plaintiff failed to actively obtain other employment, the defendants have chosen to disregard the extensive record of psychiatric problems the plaintiff experienced immediately following her termination; problems which certainly would have impacted her ability to obtain other employment.

The defendants also dispute the manner in which the plaintiff's expert calculated his back

pay figure.  The defendants contend that the plaintiff's expert failed to adjust the plaintiff's lost

earnings for certain work expenses including the mandatory contributions to the pension plan and

social security and the likely costs of incidental expenses associated with employment.  The

plaintiff's expert acknowledges that "plaintiff was required to contribute 3% of her salary for the

first ten years of pension participation," however, the court finds that it should not be reduced

from the plaintiff's loss calculation as it represents a benefit to the plaintiff.  Similarly, although it

is true that the plaintiff would have been required to contribute to Social Security, Social Security

contributions are not typically deducted from back pay awards.  *See Vernon v. Port Auth.,* 2004

U.S. Dist. LEXIS 17397 * 10 (S.D.N.Y. Aug. 30. 2004).  Finally, despite the fact that the

plaintiff's tax returns for 2002 and 2003 reflect that she claimed $30,032 and $22,957 respectively

in employment related expenses, the court does not have sufficient evidence before it to attribute

those deductions to the plaintiff's potential work related expenses from 2004 to 2009.[3]  As a

result, the court awards the plaintiff back pay in the amount of $427,718.

### B.  Front Pay

"Front pay is . . . money awarded for lost compensation during the period between

judgment and reinstatement or in lieu of reinstatement."  *Luca,* 2008 U.S. Dist. LEXIS 47973 *4

(E.D.N.Y Jan. 16, 2008).  In determining whether an award of front pay is appropriate, "the court

must attempt to make the plaintiff whole, while avoiding granting plaintiff a windfall." *Wylucki,*

2001 U.S. Dist. at * 6 (citing *Standley v. Chilhowee R-IV School Dist. 5,* 5 F.3d 319, 322 (8th Cir.

1993).  As such, the Second Circuit has suggested that "a plaintiff can often be made whole '

---

[3]The court does not believe that an adjustment for potential unemployment is appropriate,
and thus, also rejects the defendants' claim that the back pay award should be reduced by 5%.
Similarly, given the fact that the back pay award will be subject to federal and state taxes, no
adjustment should be made to account for this liability.

through an award of back[pay] coupled with an order of reinstatement.'  It recognizes, however the '[r]einstatement may not always be possible' because 'the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation; in such cases, 'a reasonable monetary award of front pay is necessary."  *Id.* (internal citations omitted).

The plaintiff's papers are silent with respect to reinstatement despite the fact that the plaintiff sought, in her complaint, an order directing the defendants to reinstate her to her permanent civil service position. *See* Second Amended Complaint.  Instead, the plaintiff seeks $769,449 in net future pay and $221,522 in future pension income.[4]  The defendants have also failed to address reinstatement in their papers; rather, the defendants assert the same arguments that were made with respect to back pay.

Although reinstatement is not always feasible, "reinstatement is the preferred remedy rather than front pay." *Picinich v. United Parcel Service,* 2005 U.S. Dist LEXIS 38212 * 79 (N.D.N.Y. Dec. 23, 2005); *see also Collins v. Suffolk County,* 349 F. Supp. 2d 559, 564 (E.D.N.Y. 2004); *Shorter v. Hartford Financial Services Group, Inc.,* 2005 U.S. Dist LEXIS 19902 *2 (D. Conn. May 31, 2005); *Reiter v. MTA,* 2003 U.S. Dist. LEXIS 17391 * 40-41 (S.D.N.Y. Sept. 30, 2003).  While the issue of reinstatement has not been raised in the plaintiff's post-trial submissions, the defendants' papers suggest that reinstatement may be feasible.  There is no indication that the plaintiff's position in this regard has changed or that the relationship of the parties has been too damaged.[5]  *See Reiter,* 2003 U.S. Dist. LEXIS at *41.  The court therefore

---

[4]The plaintiff offer a second scenario for calculating future earning based on the presumption that the plaintiff would have been promoted to a Planner Supervisor in 2007.  The court rejects the second scenario as too speculative.

[5]Given recent electoral results, any conflict between the plaintiff and her former supervisors may no longer be an issue.

declines to award front pay at this time and will provide the parties with an opportunity to weigh-in on the feasibility of a reinstatement award by a date set forth below.

### C. Out of Pocket Medical Expenses

The plaintiff also seeks to be reimbursed for medical expenses not subject to reimbursement by insurance.  Specifically, the plaintiff seeks $79,949 for her treatment by Dr. Petersen through the date of trial, $3,975 for her treatment by Dr. Donatelli, $4,616 for prescription medication co-payments, and $104,122.50 for future medical expenses.  The parties clearly understood that in the event of a verdict in Morgenstern's favor, the court would determine the plaintiff's entitlement to back pay and front pay because of the equitable nature of the awards, *see* 7/27/09 Tr. at 3-4.  The court did not indicate that it would resolve any other damage issues, nor did it prevent the parties from submitting such evidence to the jury.  Accordingly, the request for out of pocket medical expenses should have been presented to the jury and is, thus, waived.

### D.  Enhanced Damages for Excess Tax Liability

The plaintiff also seeks to enhance her economic damages award to compensate her for the increased tax liability she will incur from the projected lump sum damages award. The plaintiff argues that she will likely be subject to a much higher tax bracket in the year in which she receives the large award.  Although there is precedent for such an award, the court declines to award the plaintiff an additional monetary amount to offset the increased tax consequences of the economic damages award she will receive.  *See Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 287 (8th Cir. 1993)(refusal to enhance monetary award for increased tax liability); *Belleville v. United Food and Commercial Workers Int'l Union Indus. Pension Fund,* 620 F. Supp. 2d 277, 281 (D. R.I. 2008)(damages for increased tax liability denied in ERISA case); *Kelley v. City of Albuquerque,* 2006 U.S. Dist. LEXIS 28785

* 21-22 (D.N.M. Mar. 31, 2006)(declining to exercise discretion to award additional money for

tax liability in Title VI case); *Best v. Shell Oil, Co.,* 4 Supp. 2d 770 (N.D. Ill. 1998)(denial of

request for enhanced monetary award). *Cf. Eshelman v. Agere Sys.*, 554 F.3d 426, 440 (3d Cir.

2009)(awarding supplemental monetary award for increased tax liability).

## III.  Pre-Judgment Interest

The plaintiff also seeks an award of prejudgment interest.  The defendants do not dispute

that the plaintiff is entitled to an award of prejudgment interest with respect to any back pay

damages.  *See Wylucki,* 2001 U.S. Dist. LEXIS at * 18 ('prejudgment interest is appropriate on an

award of back pay in an action commenced under 42 U.S.C. § 1983).  However, the defendants

contend that prejudgment interest should not be awarded on the balance of the plaintiff's

compensatory damages award.[6]  "In a suit to enforce a federal right, the question of whether or not

to award prejudgment interest is ordinarily left to the discretion of the district court, which is to

take into consideration '(I) the need to fully compensate the wronged party for actual damages

suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial

purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant to

the court.'" *Gierlinger v. Gleason,* 160 F.3d 858 (2d Cir. 1998)(internal citations omitted);

*Wickham Contracting Co. v. Local Union No. 3, IBEW,* 955 F.2d 831, 834 (2d Cir. 1992).

In the present case, the court finds that the $1.5 million award fully compensates Morgenstern for

the actual damages she suffered for the due process violation and, in the interest of fairness, an

award of prejudgment interest with respect to the jury's award would not be appropriate.

---

[6]The court need not address the defendants arguments with respect to the availability of
prejudgment interest for medical expenses given the court's determination with respect to that
award.

Therefore, the court awards the plaintiff prejudgment interest solely on the back pay award to be calculated in accordance with the provisions set forth in 28 U.S.C. § 1961(a).[7]

## IV. Attorneys' Fees Award

"In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser. . . . Congress, however, has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes." *Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. Of Health & Human Res.,* 532 U.S. 598, 602 (2001).  42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee as part of the costs.

42 U.S.C. § 1988(b).  The defendants do not dispute that the plaintiff is a prevailing party whose reasonable attorneys' fees and costs are compensable.  The defendants do argue, however, that the fee request is unreasonable.

To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  Reasonable hourly rates in attorneys' fee awards are determined with reference to a number of factors, including but not limited to those factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).[8]  *See Arbor Hill,*

---

[7]"There is a considerable divergence of opinion as to the most appropriate means for determining a suitable prejudgement interest rate."  *Ferguson v. Lander, Co.,* 2008 U.S. Dist. LEXIS 26738 *74 (N.D.N.Y. Apr. 2, 2008).  The court will follow those courts that have looked for guidance to 28 U.S.C. § 1961.  *Id., see also Picinich,* 2005 U.S. Dist LEXIS 38212 at 30.

[8]The *Johnson* factors, as articulated by the court in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the

522 F.3d at 186-87, 190.  Those factors are to be considered within the context of the relevant

legal "community," traditionally defined as "the district where the district court sits."  *Arbor Hill,*

522 F.3d at 190 (internal citation omitted).  That definition notwithstanding, some courts in this

district, finding that the "border between the Eastern and Southern Districts of New York is

uniquely permeable," have in the past allowed consideration of Southern District rates in figuring

awards in Eastern District cases, and have deemed it "appropriate to establish fees by taking into

account the rates charged by lawyers in the Southern District."  *New Leadership Comm. v.*

*Davidson,* 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998); *see also Nicholson v. Williams,* 2004 WL

4780498, *11 (E.D.N.Y. Apr. 5, 2004); *Tokyo Electron v. Discreet Industries,* 215 F.R.D. 60, 64

(E.D.N.Y. Apr. 3, 2003).  That approach can no longer be followed, however, based on the recent

decision in *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009).

  *Simmons* held that the definition of community for "forum rule" purposes is narrow, and

consideration of Southern District rates in Eastern District awards is, in most instances, no longer

permissible.  Applying the forum rule, the Second Circuit held that a district court "must now

presumptively award the prevailing rate within the district unless the party seeking fees

'persuasively establish[es] that a reasonable client would have selected out-of-district counsel

because doing so would likely (not just probably) produce a substantially better net result.'"

*Gutman v. Klein,* 2009 WL 3296072, *2 (E.D.N.Y. Oct. 13, 2009) (quoting *Simmons,* 575 F.3d at

172).  Here, the plaintiffs' attorneys are based in the Southern District, but this is an Eastern

District case, and application of the *Simmons* forum rule will impact the determination of the

---

case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
'undesirability' of the case; (11) the nature and length of the professional relationship with the
client; and (12) awards in similar cases."  522 F.3d at 186, n.3 (citing *Johnson,* 488 F.2d at 717-
19).

presumptively reasonable fee

In determining whether an applicant can overcome the exception to the forum rule, the court must consider "experience-based, objective factors," including "counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." *Id.* at 175-76.  Further, the party seeking the award "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176.  Among the ways that a fee applicant can make this showing is "by establishing that local counsel possessing requisite experience were unwilling or unable to take the case (citation omitted), or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.*  This is a very difficult standard to meet.

Here, the plaintiffs argue that the "plaintiff benefitted greatly from having skilled counsel with significant experience in employment civil rights cases," and that a reasonable paying client in the plaintiff's shoes would certainly have paid the requested fee especially since the proposed billing rate is a discount to the customary rate charge to other firm clients.  *See* Pls. Mem at 6-7.  The plaintiff further argues that with respect to *Simmons*, the application of Southern District rates, is appropriate as most of its clients are located in the Eastern District and are willing to pay her counsel's customary billing rate.  Although there is no question that the individual attorneys who worked on this case have excellent credentials and are experienced in litigating civil rights cases, and that these facts might meet the *Arbor Hill* standard of what a reasonable client would be willing to pay, the facts fall far short of the *Simmons* standard for deviating from the forum rule, which requires extraordinary circumstances that were not present in this civil rights case.  In other words, although counsel clearly has expertise litigating civil rights cases, the court cannot

15

find that use of in-district counsel would have produced a substantially inferior result.  Thus, the

fee application must be determined using *current*[9] Eastern District rates.

    The plaintiffs seek an award of $2,595,907 in attorneys fees, based on the following hourly

rates: of $650 for partners Douglas Wigdor, Scott Gilly and Kenneth Thompson, $595 for Andrew

Goodstadt, $500 for associates Jihee Suh and Christopher Davis, $450 for Renan Varghese, $395

for Ariel Graff and Jeffrey Doughtery and $180 for paralegals.  The plaintiff has provided

evidence of prevailing market rates in the Eastern District and the court has researched those rates

for lawyers in comparable cases.  Awards in recent civil rights cases have ranged generally from

$790 to $100, depending upon years of experience and whether the attorney is a partner, a senior

associate or a junior associate.  *See Gutman v. Klein,* 2009 WL 3296072 (Oct. 13, 2009)(awarding

partners $300 to $400; senior associates $200 to $350, $100 to $200 for junior associates);

*Rodriguez v. Pressler &Pressler, LLP,* 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 29, 2009);

*Green v. City of New York,* 2009 U.S. Dist. LEXIS 86028 (Feb. 13, 2009)(awarding $350 for

partners with between seventeen and nineteen years of experience, $375 for partner with 41 years

of experience, $200 for associates with five to six years of experience, and $150 for associate with

3 years of experience) (recommitted for further consideration of *Simmons*); *Kaufman v. Maxim

Healthcare Services, Inc.,* 2008 U.S. Dist. LEXIS 77855 *19, 30 (E.D.N.Y. Sep. 9,

2008)(awarding $400 to attorney with offices located in Southern District with formidable

_____

        [9]"The Supreme Court held in *Missouri v. Jenkins,* 491 U.S. 274 (1989), that '[a]n
adjustment for delay in payment is . . . an appropriate factor in the determination of what
constitutes a reasonable attorney's fee,' *id.* at 284, because 'compensation received several years
after the services were rendered – as it frequently is in complex civil rights litigation – is not
equivalent to the same dollar amount received reasonably promptly as the legal services are
preformed,' *id.* at 283.  We have held that to 'adjust[] for delay,' *id.* at 284, the 'rates used by the
court should be 'current rather than historic hourly rates.'" *Lochren v. County of Suffolk,* 2009
WL 2778431 (2d Cir. Sept. 3, 2009).

experience and reputation).

The plaintiff cites to the two recent Eastern District cases where the higher billing rates were awarded. *See Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (awarding $585 to $790 for partners and $270 to $500 for associates); *Ueno v. Napolitano,* 04-CV-1873 Apr. 17, 2007(Pohorelsky, M..J.)(adopted 2007 U.S. Dist. LEXIS 34787 (E.D.N.Y. May 4, 2007)).  However, both cases were decided prior to *Simmons* and applied Southern District rates with a *Simmons* analysis. *See Steinberg,* 612 F. Supp. 2d at 224 (using uncontested Southern District billing rate in arriving at lodestar figure); *Ueno,* 04-CV-1873 Apr. 17, 2007 n.11(relying on Southern District fee awards).  Accordingly, in determining what constitutes a "reasonable hourly rate," the court gleans guidance from recent post-*Simmons* holdings and relies, also, on 'its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community." *Nike, Inc. v. Top Brand Co.,* 2006 U.S.  Dist. LEXIS 8381 *4-5 (S.D.N.Y. Feb. 24, 2006).

The rates sought here by all of the attorneys are higher than those that have been approved in this District for actions of this sort.  Nonetheless, the plaintiff has offered substantial information concerning her lawyers' educational background, bar admissions and experience litigating civil rights cases.  And, while the levels of experience varied among the attorneys, their biographies make clear that the attorneys were all well-trained professionals.  The plaintiff argues, in this regard, that she benefitted from choosing attorneys from Manhattan with such significant expertise in civil rights cases.  But her choice was not justified given the nature of the issues in this case, the wealth of competent civil rights attorneys in this district, and the far more limited resources being marshaled by the defendants, who were represented by the Nassau County Attorneys' Office.

17

The court is also compelled to consider the dismissal of the first amendment retaliation claim in making its determination, the desirability of the case, and the length of time the attorneys were given to prepare for the case. Thus, keeping in mind the *Johnson* factors noted earlier, the court finds that the rates charged by these attorneys "would simply have been too high for a thrifty, hypothetical client-at least in comparison to the rates charged by local attorneys." *See Arbor Hill Concerned Citizens,* 493 F.3d at 112.

In reducing the hourly rate, the court is guided by the decision of Judge Cogan in *Gutman* and finds that the plaintiff is entitled to be reimbursed at the following rates:

| **Attorneys** | **Rates** |
| --- | --- |
| Douglas Wigdor | $ 400 |
| Scott Gilly | $ 400 |
| Kenneth Thompson | $ 400 |
| Jihee Suh | $ 250 |
| Christopher Davis | $ 250 |
| Andrew Goodstadt | $ 300 |
| Renan Varghese | $ 200 |
| Ariel Graff | $ 200 |
| Jeffrey Dougherty | $ 200 |
| Paralegals | $ 100 |

As required by *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983), the plaintiff's counsel has submitted contemporaneous billing records setting forth the date and amount of time when services were rendered, along with the name of the attorney and a description of the services performed. *See* Gilly Decl., Ex. D. Those billing records reflect that the attorneys spent a total of 5,553.7 hours on this matter. While the plaintiff may have benefitted from having one or more attorney who was an expert in civil rights litigation, she certainly did not require nine attorneys to try this case. A review of the time records indicates that at almost all times, more than one partner and several associates actively participated in the

18

litigation and the court does not believe that each of the nine attorneys could have played such a "unique role in bringing this litigation to a successful conclusion" that no efforts were duplicated. For example, the plaintiff had two partners and one paralegal trying the case and several attorneys performing research behind the scenes.  In addition, the plaintiff often had more than one partner participate in telephone conferences, even for administrative matters, more than one attorney prepare for depositions, and it is clear that documents were always reviewed and/or edited by several members of the firm.

Accordingly, the entries reflect excessive time spent on various task due to the use of multiple attorneys and paralegals.  To reflect this, the court will exercise its discretion and reduce the number of overall hours by 25%.  *See Lochren v. County of Suffolk,* 2009 WL 2778431 (2d Cir. Sept. 3, 2009)(district court in best position to weigh need for multiple attorneys); *N.Y. State Ass'n of Retarded Children,* 711 F.2d at 1146 (noting that courts have "endorsed percentage cuts as a practical means of trimming fat from a fee application"); *Lavely v. Redheads, Inc.,* 2007 U.S. Dist LEXIS 77109 *26 (S.D.N.Y. Oct. 12, 2007)(25% reduction used to address overstaffing issues); *Envirosource, Inc. v. Horsehead Resource Dev. Co.,* 981 F. Supp. 876, 884 (S.D.N.Y. 1998) (reducing total number of hours by 25%); *see also Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994) (district court not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items") (*per curiam*).

The court will not, however, deduct from the award the amounts incurred for legal services rendered in connection with the breach of contract, civil service law, or human rights law claims that were voluntarily dismissed or the defamation claim and first amendment claim that were involuntarily dismissed. The court agrees with the plaintiff that the work done in relation to those claims contributed to the ultimate success of the lawsuit, and thus, is compensable. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)(relevant query not "whether hindsight vindicates an

attorneys' time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

As such, the attorneys will be awarded the following for legal services rendered:

| Attorneys | Rates | Hours | Sub-Total |
|---|---|---|---|
| Douglas Wigdor | $ 400 | 426.2 | $170,480 |
| Scott Gilly | $ 400 | 1,014.8 | $405,920 |
| Kenneth Thompson | $ 400 | 14.4 | $   5,760 |
| Jihee Suh | $ 250 | 1,561.1 | $390,275 |
| Christopher Davis | $ 250 | 680.5 | $170,125 |
| Andrew Goodstadt | $ 300 | 98.2 | $ 29,460 |
| Renan Varghese | $ 200 | 280.5 | $ 56,100 |
| Ariel Graff | $ 200 | 217.7 | $ 43,540 |
| Jeffrey Dougherty | $ 200 | 146.5 | $ 29,300 |
| Paralegals | $ 100 | 1,113.8 | $111,380 |

|  |  |
|---|---|
| Sub-total: | $1,412,340.00 |
| Less 25% reduction | 353,085.00 |
| **Total:** | **$1,059,255.00** |

Thus, the court recommends an award of attorneys' fees in the amount of $1,059,255.[10]

## V.  Costs

The plaintiffs also seek costs in the amount of $124,197.54 for the relevant time period. Included in the general category of expenses are the filing fee and fees for process servers, court reporters, experts, e-discovery consultants, in-house copying, outside copying services, overnight delivery, pacer, messenger services and medical records.  Specifically, the plaintiff seeks to be reimbursed for the following items:[11]

**Category**                                      **Amount**

---

[10]The plaintiff seeks to supplement her motion with supporting materials for additional attorneys' fees and cost incurred in September and October 2009 and requests permission to update the fee application again after the defendants' submit their Rule 59 motion.  The court will address those requests after receipt of the defendants' submission.

[11]The plaintiffs did not provide any support for the $671 allegedly expended by Rosen, Leff.  Accordingly, that amount was not included in the chart.

| | |
|---|---|
| Filing fee | $     150.00 |
| Process servers | $     142.00 |
| Subpoena/Witness Fees | $     113.93 |
| Court reporters | $ 39,820.60 |
| Experts | $ 63,205.24 |
| E-discovery consultants | $   8,600.23 |
| In-house copying | $   6,672.00 |
| Outside copying services | $   3,069.39 |
| Overnight delivery | $   1,554.67 |
| Pacer | $     661.52 |
| Messenger services | $       86.26 |
| Medical records | $     121.80 |

"The Second Circuit has held that reasonable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Vilkhu v. City of New York,* 2009 U.S. Dist LEXIS 73696 *64 (E.D.N.Y. Jun. 25, 2009).  However, certain costs associated with routine office overhead and cost associated with expert witness fees are not recoverable.  *Id.* (citing *Wilder v. Bernstein*, 975 F. Supp. 276 (S.D.N.Y. 1997).  As such, the defendants argue that the plaintiff should not be compensated for costs associated with the expert witness fee or the e-discovery consultant.  The defendants also argue that the cost should be cut by 75% to reflect the plaintiff's limited success in the case.

To begin with, expenditures for filing fees, process servers, subpoena/witness fees, transcripts, printing and photocopying, messenger services, and postage are routinely recoverable and will be awarded on this case. *See Bobrow Palumbo Sales, Inc. v. Broan-Nutone,* 2008 U.S. Dist. LEXIS 35195 *26 (E.D.N.Y. April 30, 2008)(citing *Simmons v. N.Y. City Transit Auth.,*2008 U.S. Dist. LEXIS 16949 *22-23 (E.D.N.Y. Mar. 4 2008)).  The defendants are correct that the court lacks authority to shift expert witness fees to the losing party in a section 1983 case. *See West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 102 (1991).  The court also believes that the fees for the e-discovery consultant are akin to expert witness fees and should not be recovered, *see Vilkhu,* 2009 U.S. Dist LEXIS at *64, and that PACER expenses are part of routine office

21

overhead.  The court finds that the balance of the costs are reasonable and should not be reduced

due to the fact that the plaintiff succeeded on one claim.  As the court has preciously noted, the

"plaintiff's successful and unsuccessful claims are factually intertwined," and thus, an "across-

the-board reduction in costs . . . is not appropriate here."  *Id.*

In her supplemental submission, the plaintiff also seeks reimbursement for travel, hotel

and meal expenses.  The defendants concede that expenses related to travel, transportation and

meals are now routinely recoverable as costs.  *Id.* at *30 (citing *Simmons,* 2008 U.S. Dist. LEXIS

at *22(costs relating to travel recoverable); *In re Merrill Lynch & Co. Research Reports Sec.*

*Litig.,* 2007 U.S. Dist. LEXIS 9450 *79 (S.D.N.Y. Jan. 31, 2007)(costs related to transportation

and meals recoverable).  Nonetheless, the defendants argue that in light of *Simmons* expenses for

travel from the city should not be recoverable.  The court disagrees with the defendants'

interpretation of *Simmons* and finds that the plaintiff is also entitled to reimbursement of such

expenses amounting to $12,769.94.  In conclusion, the court recommends an award of costs in the

amount of  $64,500.49.

**VI.  Post-Judgment Interest**

Finally, the plaintiff is entitled to post-judgment interest from the date of the entry of the

judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield in

accordance with 28 U.S.C. § 1961(a).

**CONCLUSION**

For the reasons set forth above, the plaintiff is award $1,500,000 in compensatory

damages, $300,000 in punitive damages, $427,718 in back pay, prejudgment interest on her back

pay award at a rate consistent with 28 U.S.C. § 1961(a), $1,059,255.00 in attorneys fees,

$64,500.49 in costs, and post judgment interest in accordance with 28 U.S.C. § 1961(a).

By January 15, 2010, the parties are directed to submit supplemental briefs not to exceed

ten pages on the issue of reinstatement.


Dated:  Central Islip, New York                    **SO ORDERED:**
            December 15, 2009                        _____/s/ _____
                                                     Arlene Rosario Lindsay
                                                     United States Magistrate Judge